172173 Novartis Pharmaceuticals v. Breckenridge Pharmaceuticals v. Breckenridge Good afternoon, Your Honors. May it please the Court, Christina Schwartz of the Novartis Pharmaceuticals Corp. The only reason the 990 divisional expires before its parent, the 772 patent, is because Congress enacted the URAA and changed the calculation of patent terms. Double patenting should not apply here because there's no evidence Congress intended for it to apply. Neither of the two rationales for double patenting is triggered on these This issue has never been addressed by this Court or the Supreme Court. And double patenting is a judicial doctrine, so it's not one Congress has addressed in any event. That is correct. It is judicial. So our expectation that they would address it is pretty low, right? Correct, yes. When we say that this is a new issue, the new issue specifically is, what do we do when we have a pre-URAA patent and a post-URAA patent? Is that right? That is correct. And the issue is even more narrow here. It's a pre-URAA parent and a post-URAA divisional patent. They have the same effective filing date. They're in the same family. Okay, well, we've got a district court judge here who seriously wanted to apply our precedent and did that by saying Gilead applies here. And there's a lot of discussion in the briefs. Well, there's no gamesmanship here as there was, but certainly a salient factor in Gilead is that the public has the right to rely on a patent's expiration and that invention being dedicated to the public. That's no different in this case than it was in Gilead, is it? You are correct that this court in Gilead did rely on the public's expectation to use an invention in an expired patent. But as this court did recognize in Gilead in footnote 5, that right is not absolute. There can still be restrictions on the public's use to practice an invention in an expired patent. And those include instances where Congress has specifically modified patent terms. And one such example is patent term extension. The logical reason of this court's decision in the Merck v. Hitech case is that patent term extensions are an exception to double patenting. So that's a situation where Congress has modified patent terms and that gives rise to an exception. And on the facts of this case, we should similarly find no double patenting based on Congress's enactment of the URAA. The only reason the 990 patent expires earlier than its parent is because Congress enacted the URAA. And that did two things. First, it effectively shortened the term of the later divisional. But it also included section 154C1, which provides that pre-GATT patentees shall be entitled to the longer of the pre- or post-GATT terms. So there Congress is giving effect to the bargain that Novartis bargained for when it disclosed its invention before the URAA to the public. Breckenridge says in the red brief at 25 that it was, I'm quoting, it was Novartis's actions that led to invalidation of the 772 patent because Novartis obtained a second patent on subject matter it admits was patentably indistinct. Novartis knew, I emphasize on that, when it applied for the second 900 patent that the 772 patent would expire later and it declined to make a timely terminal disclaimer of the 772 patent over the 990 patent. Do you agree that patentees' knowledge when filing the second patent is relevant to our analysis? And if not, why not? Well, I have two answers. First, we believe the analysis should be an objective analysis. And second, we strongly disagree that Novartis knew at the time that it filed the 990 patent or at the time when that patent expired in the last day to file a terminal disclaimer that the 990 patent could be used as a double patenting reference against the 772 patent. In fact, at the time, all three district courts that had considered this issue before Gilead found no double patenting on the specific facts here. Can we go to your timeline at page 32 of your blue brief? This shows the timeline of the pre-URAA 772 up against the timeline of the post-URAA 990. And I think I understand your point to the extent that you're saying this pre-URAA patent, all pre-URAA patents got 17 years, and so this one should also get its 17 years unless a patent had issued before and then the latter issued patent would have its term tied off to the first issued patent. That's how classic ODP law worked. So getting to this timeline on page 32, what if the issue date of the 772 patent was moved further down the line so that it issued second, not first, with respect to the 990 patent? If that had been the case, then would you believe that, okay, because the 990 patent issued first, the 772 patent's term should be tied to the expiration date of the 990 patent? So we're not arguing for any sort of general rule that issue dates should be supplied. Right, but I need to understand how all this is going to work when we're dealing with one pre-URAA patent and one post-URAA patent, and I'm trying to understand fully the rationale of your preferred position. So do you have an answer to my question of what would happen to the 772 patent's term if its issuance date had been after the 990's patent issuance date? Those are not the specific facts here, and I don't believe we've briefed that particular issue. Under the specific facts here, Novartis didn't file the application that led to the 990 until it received notice from the Patent Office that the first patent had already been allowed. So there was no possibility for any gamesmanship here in terms of moving issuance dates, and no gamesmanship has, in fact, been alleged here. The situation that you proposed is somewhat unique. There would have to be something going on to suggest a significantly delayed issuance date. I'm not considering a significant delay. I'm just trying to figure out if the issuance date had come after the 990, then, like I said, under classic ODP law, one could say, well, the second issued patent's term is tied to the first issued patent's term. We wouldn't disagree with the finding of double patenting under that hypothetical that you've proposed, but that's not the situation that we have here. Novartis did not file the application that led to the 990 patent until it already knew that the first patent had been allowed. So it received notice from the Patent Office. It merely engaged in routine divisional practice that many numerous patentees have done. It received a patent on the compound of Everolimus. It sought to claim different methods of using that compound and different compositions of that compound. I hate to put you in this position, but what did we mean in Gilead when we said that a bedrock principle of obviousness-type double patenting law is that the expiration dates get tied together because once a patent expires, the public should be entitled to rely on the expiration of that patent to not only at least be released from that patent owner, from being able to practice the subject matter in that expired patent, but also obvious variations of that, at least with respect to that patent owner, being released from ever having to worry about that patent owner chasing after that member of the public. So what did we mean when we said all that, and why wouldn't just a mechanical application of that here mean, okay, sorry, you needed to tie it off to the 990 expiration date? Well, what I believe that you said in Gilead is that that is perhaps a general rule, but not a bright-line rule that applies in all circumstances because you expressly also indicated in footnote 5 that there can be numerous additional restrictions on the public's use to practice the invention in an expired patent, and the athletes have not disputed those. There can be other patents claiming overlapping subject matter. There can be patent term extensions. We have the safe harbor. There can be FDA bars that prevent people from practicing the invention in an expired patent. I guess another way of saying it is Congress can sometimes intervene and alter the typical balance of how ODP law works, and that's arguably what it did with the patent term extension amendment with Section 156, and in your view, that's what they likewise did when they post-URAA. They changed the law on the term of a patent and how to measure the term of a patent, and so therefore what we're now dealing with is a comparison of apples and oranges, and it's not really appropriate to use Gilead, which was purely for post-URAA patents, in a context where we only have one post-URAA patent, and then we have another one, the one that's subject to possible invalidity here, that is actually a pre-URAA patent. That's exactly right. I think you stated numerous times in Gilead that the holding there was limited to the circumstances of the case, and that holding only addressed post-URAA patents, so not the type of patent that we have here, and you're also correct that in Section 154C1, Congress implemented the URAA, and when it did that, it did two things. It effectively shortened the term of the 990 patent compared to what that patent would have received before the URAA, but it also included Section 154C1 that says that pre-GAD patents shall be entitled to the longer of the pre- or post-GAD term, and there's no evidence whatsoever that Congress intended for double patenting to apply on the unique facts that we have here. Novartis should not be penalized, and the rights that it bargained for should not be taken away from it because Congress enacted the URAA. There's no evidence of that whatsoever, and in addition, double patenting should not apply here because neither of the two rationales for double patenting is triggered on the specific facts of this case, and we know that the first and primary justification is to prevent patentees from unjustly extending their patent rights beyond the term mandated by Congress, and there was no such unjust extension here. The 772 patent was filed before and issued before the 990 patent, and the only reason it expires later is because Congress enacted the URAA. Upholding the validity of that patent here does not unjustifiably extend that patent, and the reason for the extension is not attributable to Novartis. It's attributable to Congress's actions, so there's no unjustified extension, and the second rationale for double patenting also is not applicable here. It hasn't been argued. That's preventing multiple suits by different assignees. That possibility was eliminated during prosecution because Novartis filed the terminal disclaimer during prosecution of the 990 patent, stating that it would be enforceable only if the two patents were commonly owned. Can I ask you another hypothetical? Sure. Back to your timeline on page 32. What if the 772 patent expired first? What would happen to the 990? Would we say, oh, you know, we're going to tie off the 990 patent's expiration now to the 772's expiration date? That's correct. Terminal disclaimer was filed during prosecution of the 990 patent, and therefore its term would expire at the same time as the 772 patent. Okay, so if the 772 patent had expired first. That's correct. In your facts, it expired second. So what was the point of that terminal disclaimer that you filed, given that you weren't actually disclaiming any term? We agree. It was requested by the Patent Office, and Novartis filed the terminal disclaimer at the Patent Office's request. Okay, but you also agree or concede or acknowledge or take the position that if the expiration date of the 772 had been first, then the 990 patent's expiration date should be tied to that earlier expiration date of the 772. That is correct, yes. I believe I understand what you're asking. I believe that is correct, yes. I'd like to reserve some time. Thank you. A little lawyer-like answer. Good afternoon, Your Honors. May it please the Court. William Jay on behalf of all the Eppleys. Novartis got, as has been discussed, the 990 patent, and it kept the 990 patent for its full term. It enjoyed all the benefits of the 990 patent, including whatever benefits it got from waiting until 1997 to begin prosecuting it, with a different prosecution history and differently worded claims. So upon the expiration of the 990 patent, the public should no longer be blocked from accessing that invention or an obvious variant of it by those patents. I certainly take the point that my friend has made, that there could be other patents that are patentably distinct. But what we take this Court to have held at Gilead is that with respect to the patent itself that has expired and obvious variants of that invention, that inventor and his or her assignees cannot continue to lock up that invention. Well, I think one of the difficulties about this, I mean, ODP is a tricky species. And now it got even trickier in this case because we have a pre-URAA patent and a post-URAA patent. I'm going to stop saying URAA. I'm going to say GATT. We have a pre-GATT patent and we have a post-GATT patent, right? And so one argument could be that when you have a pre-GATT patent and a post-GATT patent and there's a chance that the pre-GATT patent could get invalidated for ODP, what we ought to be doing is using traditional pre-GATT ODP principles against that patent. On the other hand, when there's a circumstance where it's the post-GATT patent that's on the block for being invalidated under ODP, then we ought to use what I'll call the Gilead principle. Because in post-GATT land, what we care about is ensuring that the patents all expire the 20th anniversary of the earliest filing date. In pre-GATT land, what we care about is that all the related patents expire on the 17th anniversary of the first patent's issuance date. So we have two very different measuring sticks that we're using in those two different universes and now we have worlds colliding here where we have a half-dog, half-cat situation. So if we were to use traditional ODP principles in the facts of your case, this particular 772 patent would be able to maintain and preserve its entire 17-year patent term because it's not anything that could be regarded as an unjustified extension of the pre-GATT 17-year patent term in this instance. It would be getting no more than what is expected in pre-GATT law in terms of what Congress expected the patent term ought to be for a given patent and related patents. So I'd like to hear your response now to this line of thinking, and I guess you're going to explain to me why that line of thinking is defective. Well, Your Honor's question built in, I think you used the phrase, pre-GATT ODP law, but what we take from Gilead at page 1215 is that the discussion of a bunch of cases from this court and its predecessor court and the Supreme Court, all obviously pre-GATT decisions, and what this court said in Gilead is that in those cases, the date that really mattered was patent expiration. Now that lined up in most cases with patent issuance, of course, because of the way the terms were written pre-GATT. But nonetheless, the court said in Gilead that the date that really mattered was and still is patent expiration. And so if that is the pre-GATT and the post-GATT law from this court as we take it, that what matters is patent expiration. And so for there to be something different, for this really to be half dog and half cat, because it bridges the effective date of the GATT statute, there would have to be something in the GATT statute that makes that happen, in the URAA to make that happen. There's nothing in 154C1, which is the relevant section, that creates an exception to that principle of office-type double patenting. I guess there's an ambiguity potentially when it says for those pre-GATT patents, you're going to get the larger of either 17 years from issuance or 20 years from the earliest filing date, subject to a terminal disclaimer. And then now it's on us to try to understand what does that mean, subject to a terminal disclaimer, subject to potential obviousness-type double patenting principles. Are we going to use, against that pre-GATT patent, what I'll call earlier pre-GATT ODP principles, where we're looking to make sure that no patent goes beyond 17 years, or are we going to use the Gilead principles, where we're making sure that no patent goes beyond the 20th anniversary of the earliest filing date? I think, Your Honor, that I would submit that the Gilead principle, which is an interpretation not just of post-GATT law but pre-GATT law, is not tied to 17 years or 20 years. It's tied to what right the public has at the time of the expiration of the first patent. No matter how long a term that first patent has enjoyed, it might well be because of a terminal disclaimer or something else that that patent had actually had a shorter term than the statutory maximum term. It could have had a longer term because of patent term extension or something like that. But the Gilead principle, interpreting a long line of cases, is that upon the first expiration, that's when obviousness-type double patenting prevents getting a second patent. The consequence of that for these patents is that when they got their first patent, they could have kept it for the full term, but they chose to seek what is undisputedly an indistinct variation, an obvious variation of that patent. They chose to seek it to get whatever benefits they saw from the different claim language. These, of course, are method of treatment patents. It didn't extend the term of the first issued patent, though, right? That's true. Of course, that was the point the dissent made in Gilead, and the court in Gilead said that that's not the point in that case, and we don't think it should be the point in this case either because although it did not extend the first issued patent, what you do have here is an extension of the monopoly or the exclusivity, the right to exclude of the 990 patent. They have the 990 patent. They enjoyed it for its full term. They have protected their pharmaceutical from generic competition for its full term, but as part of that bargain, they have to dedicate that invention to the public as far as that invention and any obvious variations thereof on the date of expiration. They could, of course, have sought patent term extension on that patent. They chose not to do so. They instead chose to seek it on the 772 patent. So do you have any dispute with the idea that Section 156 can break apart the expiration dates of related patents? For the purpose of this case, we don't quarrel with that. I believe the court is going to consider that in a case being argued tomorrow also involving Novartis called Novartis v. Ezra, but we do take that as a possible example of what the court may have meant in Gilead by saying under the circumstances here. And another good example, which my friend alluded to, is the safe harbor in 121. If the patent office is responsible for the different expiration dates because of issuing a restriction requirement, then there's a statutory safe harbor that prevents ODP from kicking in. There's a case that your opposing counsel referred to, Merck v. Hitech, where I guess about 10 years ago this court has already said it's fine to select one of your two patents that would otherwise expire together and to enjoy up to five years of patent term extension under Section 156, thereby suggesting that Congress has already contemplated at least one instance where patent terms don't have to expire together. I think that's a fair reading of Merck v. Hitech-Pharmacal, but I don't think it has any impact here because the consequence of the issuance of the two patents on the same subject matter was that the second to expire is invalid unless terminally disclaimed within the lifetime of the first. I mean, that's the holding in Boehringer-Ingelheim that you have until the expiration date of the first to expire patent to enter that terminal disclaimer. And Novartis could have done that here. My friend on the other side said that they had no reason to think that that was going to happen. Can you remind me, was Boehringer two PRECAP patents? Yes. Okay. Right. But the question in that case was just when can a terminal disclaimer be effective? Can it be entered retroactively after the expiration of the first to expire? And the answer was no. But in this case, my friend suggested that there were district court decisions that gave them to understand that they didn't have to be worried about obviousness-type double patenting in this PRECAP-POSTCAP situation. But what I think that misses is a couple of things. Number one, the Board of Patent Appeals and Interferences had, before that date, entered a decision to exactly the opposite effect in ex parte Pfizer. The board had said that in this situation, the POSTGAP patent is a proper reference against the PRECAP patent. If we were to affirm, would that be the first federal circuit or CCPA opinion in which a PRECAP patent would be getting less than 17 years of patent term because of ODP? I don't think so, Your Honor. Let me answer it this way. I think that this court has many, many times, both PRE and POSTGAP, held that a patent is invalid because of ODP. So we're not asking you to shorten the term of the patent. We're asking you to hold it invalid because, number one, it is— Just to clarify, less than 17 years from the date of the first issued patent. A PRECAP patent that's getting even less than 17 years from the date of the first issued patent. It would get less than 17 years from the date of the first issued patent. In this case. In this case, only if they had terminally disclaimed it to match it up with the 990. And, of course, the patent term statute, Fund 54C1, says 17 years or 20 years subject to any terminal disclaimers. But I'm just saying to you right now, I'm not aware of any other case. This would be the first case where a PREGAP patent would— where we would be saying a PREGAP patent would not be entitled to a term that's— or that we'd be cutting it off when it would be getting less than 17 years from the date of the first issued patent. I can't cite you another case, Your Honor, but I think the terminology that your question uses about cutting it off, I mean, I think that it's helpful in this case to look at what the term statute provides. It says that 154A says that a patent shall contain a grant, and then it says the grant shall be for a term, and then 154C1 for these transitional patents specifies what the term shall be. But in all events, the term is what length the patent shall have if it is not held invalid, or terminally disclaimed, or extended, or anything else. That's the date that it is in the patent on the date when it issues from the patent office. How long will it last if nothing else happens? And in this case, if nothing else had happened, this 772 patent could have retained that full term. What happened was it was invalidated by Novartis' decision to prosecute to issuance another patentably distinct patent. And so just respectfully, we don't think that it's a question of the term of the patent at all. We think it's a question about whether this patent, the 990 patent, is a proper reference, and it's stipulated that if it is a proper reference, then this court should affirm that there is no other issue before the court. So I can't cite you another case involving the 17-year term, but I also think that the principles in Gilead about the first-to-expire patent and the absence of anything in the URAA displacing that understanding about the date that really mattered is controlling. And indeed, Chief Judge Prost, you mentioned in a question to my friend about Congress not often speaking to doctrines like ODP. I think in the URAA itself, in the preceding subsection, in the 1994 version of 154b2, you'll see a reference to a terminal disclaimer that is made necessary by the patent claiming subject matter that is not patentably distinct from another patent. That can only be a reference to ODP, just as the terminal disclaimer itself, the statute itself, 253b, was put in the statute, Federico says, and a number of this court's cases have said, as a way of rescuing patents from ODP. All of those statutory elements reflect Congress's recognition that ODP is an important limitation on the ability to claim an invention. You may get one patent on an invention, but not multiple patents on that invention or its obvious variance. If you do, your remedy is to seek a terminal disclaimer. Novartis had the option to do that here and did not do so. I see that the red light is on unless the court has further questions. Thank you. A few quick points, Your Honor. First, my friend emphasized the subject to terminal disclaimer language in 154c1. It's our position that that does not address the specific circumstances here. There's no evidence that it does. That's merely maintaining the status quo. So if a patent was subject to a terminal disclaimer and was subject to section 154c1 before the URAA, it continues to be subject to a terminal disclaimer after the URAA. It's just maintaining the status quo. It doesn't address the situation here. And my friend also mentioned section 154b from the 1994 version. And that statute actually supports Novartis' position because it showed that if Congress wanted to limit the availability of a patent term right, it could have done so expressly. But it did not here. In addition, we're not aware of any case in response to your question, Judge Ten. We're not aware of any Federal Circuit or Supreme Court case where the first issued PREGAT patent got less than its 17-year patent term. Every time the Supreme Court has considered this issue, it has given effect to the full 17-year term of the first issued PREGAT patent. And finally, there have been numerous implications that Novartis should have filed a terminal disclaimer here. However, at the time when we could have filed that terminal disclaimer, we had three district court decisions that all came out our way and found no double patenting on the specific facts here. There was one earlier patent office decision that went the other way, but the district courts discounted the reasoning in that decision. And this is a judicially created doctrine. We think it was reasonable for Novartis and the public to rely on the district court decisions. And finally, one last point. This court recognized or the CCPA recognized in the In re Schneller decision that there may be situations where it's both reasonable and equitable to find that double patenting does not apply under certain circumstances. And we believe that the unique circumstances here are precisely that type of situation. Thank you. We thank both sides for cases submitted. That concludes our proceedings for this morning. You said, finally, twice. I apologize.